

AUG 3 0 2019

CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND

BY:

DEPUTY

| | | |
|---|---|---|
| **STEPHEN SIMONS,** *pro se,* | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. **PJM 18-1270** |
| | * | |
| **MI-KEE-TRO METAL** | * | |
| **MANUFACTURING, INC.,** | * | |
| | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

Defendant in this case, Mi-Kee-Tro Metal Manufacturing, Inc., has filed a Motion for Summary Judgment. ECF No. 25. The motion is fully briefed and no hearing is necessary. See Loc. R. 105.6. For the following reasons, the Motion for Summary Judgment is **GRANTED**.

### I.    Factual and Procedural Background

Mi-Kee-Tro Metal Manufacturing, Inc. ("MKT") is a manufacturer of sheet metal and HVAC ducts with its primary place of business in York, Pennsylvania. ECF No. 25. On December 30, 2015, *pro se* Plaintiff Stephen Simons accepted a position as a Sales Associate with MKT. ECF No. 35-3. The offer letter set out that the position paid "a salary of $58,500 per year, paid weekly at $1,125." *Id.* The letter contained no reference to the number of hours Simons was to work each week or if he was to be compensated for overtime. *Id.* But according to Simons, on his first day on the job, the head of the human resources department told him that his salary was based on the expectation of a forty-five hour work week. ECF No. 25-3, p. 17, ECF No. 25-4, p. 69. From the outset of his employment, however, Simons says he routinely worked fifty-five to sixty hours per week. ECF No. 16 ¶ 18. According to Simons, on two occasions, one by telephone and one by email, he informed MKT officers that he was working long hours and wanted to discuss

1

additional compensation. ECF. Nos. 25-4, p. 139, 25-8. No formal commitment to specifically change his compensation was made. On November 9, 2017, two weeks after the phone call and the day after the email, MKT terminated Simons. ECF No. 35-6.

Simons submits that MKT owes him unpaid wages, liquidated damages and interest, and attorneys' fees and litigation costs under the common law of contracts and quasi-contracts, and the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. §§ 3–503, *et seq.*, along with its Pennsylvania, West Virginia, and North Carolina analogs. ECF No. 16. He also alleges retaliation and unlawful termination under the Fair Labor Standards Act ("FLSA"). *Id.*, 29 U.S.C. §§ 201, *et seq.*

Simons has filed an opposition and MKT a reply.

## II. Analysis

### a. Summary Judgment

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This does not mean, however, that "*some* alleged factual dispute between the parties" necessarily defeats the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Rather, "the requirement is that there be no *genuine* issue of *material* fact." *Id.* (emphasis in original).

In reviewing a motion for summary judgment, the court views the facts, and all reasonable inferences that may be drawn from them, in the light most favorable to the non-moving party, i.e. Simons. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017). The court must also "refrain from 'weigh[ing] the evidence or mak[ing] credibility determinations'" when evaluating motions for

summary judgment. *Lee*, 863 F.3d at 327 (quoting *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015)). Further, "[a]lthough pro se litigants are to be given some latitude, the above standards apply to everyone. Thus, as courts have recognized repeatedly, even a pro se party may not avoid summary judgment by relying on bald assertions and speculative arguments." *Smith v. Vilsack*, 832 F. Supp. 2d 573, 580 (D. Md. 2011) (citing cases).

b. *Contract Law Claim*

Simons asserts that MKT breached its employment contract with him by failing to compensate him for the work he performed in excess of forty-five hours per week.

As indicated, the offer letter, signed by Simons and MKT's head of human resources, Tabitha Musso, sets out that the position paid "a salary of $58,500 per year, paid weekly at $1,125." ECF No. 35-3, ECF No. 25-3, p. 17. The offer letter contains no discussion about the number of hours Simons was to work each week or if he was to be compensated for overtime, or if indeed there was any basis to determine what hours would be considered overtime. ECF No. 35-3. He began working for MKT on January 4, 2016, ECF No. 25-4, p. 70, and on his first day on the job, Simons alleges that Musso told him that his salary was based on an expectation of a forty-five hour work week. ECF No. 25-4, p. 69. From the outset, however, Simons submits that he routinely worked fifty-five to sixty hours per week, ECF No. 16 ¶ 18, since he was responsible for a territory that included parts of the Mid-Atlantic and Mid-West, requiring him to travel long distances from his home in West Virginia to meet with customers. He often had to travel as far as North Carolina. ECF No. 25-4, pp. 109-110.

After initially pleading that Musso's statement on January 4, 2016, constituted an oral employment contract, ECF No. 16 ¶ 17, Simons now appears to argue that Musso's statement

merely *clarified* the contract established by the offer letter, ECF No. 35. His argument is still unavailing.

"Maryland law[1] employs an objective approach to contract interpretation, according to which, unless a contract's language is ambiguous, Maryland courts give effect to that language as written without concern for the subjective intent of the parties at the time of formation." *CBRE Realty Finance TRS, LLC v. McCormick*, 414 Fed.Appx. 547, 549 (4th Cir. 2011) (quoting *Ocean Petroleum Co. v. Yanek*, 416 Md. 74, 5 A.3d 683, 690 (Md. 2010)) (internal marks omitted). When a contract's language is clear and unambiguous, "a court shall give effect to its plain meaning." *Jos A. Bank Clothiers, Inc. v. J.A.B.-Columbia, Inc.*, 2017 WL 6406805 (D. Md. 2017 (quoting DIRECTV, Inc. v. Mattingly, 829 A.2d 626, 634 (Md. 2003)).

There is no ambiguity in Simons' offer letter. By its plain language, Simons was to be compensated by "a salary of $58,500 per year, paid weekly at $1,125," not by an hourly wage. The offer letter makes no mention of compensation for overtime. Simons himself acknowledges that he had no expectation to be compensated if he worked more than forty-five hours per week. ECF No. 25-4, pp. 84-85. Therefore, the Court finds no genuine dispute that Simons employment was based upon an annual salary and not upon a forty-five hour work week. Accordingly, the Court grants summary judgment in MKT's favor as to Simons' contract law claim.

   c.   *Quantum Meruit Claim*

The Latin term q*uantum meruit* means "as much as deserved." *Mogavero v. Silverstein*, 790 A.2d 43, 51 (Md. Ct. Spec. App. 2002) (quoting Black's Law Dictionary 1243 (6th ed. 1990)). It is a quasi-contract cause of action intended to provide "relief for a plaintiff when an enforceable

---

[1] Maryland courts typically follow the rule of *lex loci contractus* by which "the law of the jurisdiction where the contract was made controls its validity and construction." *Kramer v. Bally's Park Place, Inc.*, 535 A.2d 466, 467 (Md. 1998). It is not clear where the parties were when they executed the offer letter. Nevertheless, MKT relies on Maryland law in its motion, which Simons does not challenge. Therefore, the Court applies Maryland law.

contract does not exist but fairness dictates that the plaintiff receive compensation for services provided." *Cty. Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 607 (Md. 2000) ("Dashiell") (quoting *Dunnaville v. McCormick & Co.*, 21 F.Supp.2d 527, 535 (1998)) (internal marks omitted). "The general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests." *Dashiell*, 747 A.2d at 607 (quoting *Mass Transit Admin. v. Granite Constr. Co.*, 471 A.2d 1121 (Md. Ct. Spec. App. 1984)).

In support of his *quantum meruit* claim, Simons points to a statement MKT Vice-President, Mike Sunday, purportedly made to Simons during a phone conversation on approximately October 24, 2017, just two weeks prior to Simons' termination. In response to Simons' statement that he was working long hours, Sunday reportedly said, "if you worked those hours, we owe you for those hours." ECF. No. 25-4, p. 115, 139. These words, even if spoken, are simply too vague to establish a promise to pay. Furthermore, the work Simons completed prior to Sunday's purported statement is insufficient consideration to support the alleged promise. *Reece v. Reece*, 212 A.2d 468, 474 (Md. 1965); Williston on Contracts, § 8:11 (4th ed.). Moreover, as stated above, the terms of Simons' compensation were covered by the offer letter. Because an express contract covering the subject existed, there can be no quasi-contract. See, e.g. *Holland v. Psychological Assessment Resources, Inc.*, 482 F.Supp.2d 667 (D. Md 2007) (holding Plaintiff's quasi-contractual claim failed because of the existence of an express, enforceable contract between the parties on the same subject matter). The Court grants summary judgment in MKT's favor as to Simons' *quantum meruit* claim.

  d.  *Wage Law Claims*

Recovery under the Maryland Wage Payment Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3–503, *et seq.*, is predicated on the employer promising compensation to the employee. *Blanch v. Chubb & Sons, Inc.*, 124 F.Supp.3d 622 (D. Md. 2015) ("only when wages have been promised as part of the compensation for the employment arrangement and all conditions agreed to in advance for earning those wages have been satisfied does the MWPCL require payment") (quoting *Catalyst Health Solutions, Inc. v. Magill*, 955 A.2d 960 (Md. 2010)) (internal marks and emphasis omitted). The same is true for the MWPCL analogs in Pennsylvania (Pennsylvania Wage Payment and Collection Law ("PWPCL")), 43 Pa. Cons. Stat. §§ 260.1, *et seq.*, *Lehman v. Legg Mason, Inc.*, 532 F.Supp.2d 726, 733 (M.D. Pa. 2007) ("As stated by the Pennsylvania Supreme Court, '[t]he Wage Payment and Collection Law provides employees a statutory remedy to recover wages and other benefits that are *contractually* due to them.'") (emphasis original) (quoting *Oberneder v. Link Computer Corp.*, 696 A.2d 148, 150 (1997), North Carolina (North Carolina Wage Hour Act "NCWHA"), N.C. Gen. Stat. §§ 95–25.1, *et seq.*, *Cole v. Champion Enterprises, Inc.*, 496 F.Supp.2d 613 (M.D.N.C. 2007), and West Virginia (West Virginia Wage Payment and Collection Act ("WPCA")), W. Va. Code § 21–5–1, *et seq.*, *Adkins v. American Mine Research, Inc.*, 765 S.E.2d 217, 221 (W. Va. 1999) ("[The WPCA] provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages. The contract between the parties governs in determining whether specific wages are earned.") (quoting *Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir. 1990)).

Because the employment contract between MKT and Simons was not limited to a forty-five hour work week and contains no provision for compensation for hours worked above forty-five hours per week, Simons' claims under the MWPLC, PWPLC, NCWHA, and WPCA cannot

survive. The Court grants summary judgment in MKT's favor as to Simons' wage and hour law claims.

e.  *FLSA Retaliation Claims*

The retaliation provision of the FLSA prohibits the termination of, or discrimination against, an employee who has filed a complaint or initiated a proceeding pursuant to his rights under the Act. 29 U.S.C. § 215(a)(3).

Simons alleges that MKT's decision to terminate him was motivated by retaliation for his request for compensation for his work beyond forty-five hours per week. ECF No. 16 ¶ 26. He relies on two communications. First, his phone call with MKT Vice-President, Mike Sunday, on approximately October 24, 2017, during which, according to Simons, Simons said he was working more than forty-five hours per week and Sunday replied, "if you worked those hours, we owe you for those hours." ECF. No. 25-4, p. 115, 139. Second, Simons points to a November 8, 2017, email he sent to MKT President, Ken Brown, explaining that he had been working long hours and wanted to "discuss" "more pay and possible Commissions on Sales," ECF No. 25-8, to which Brown made no response. These two contacts occurred, respectively, within two weeks and one day before Simons was terminated on November 9, 2017. ECF No. 35-6.

To make out a *prima facie* case of retaliation, Simons must demonstrate that (1) he engaged in protected activity, e.g. made a complaint, (2) MKT took an adverse employment action against him, and (3) there was a causal link between the two events. See *Mould v. NJD Food Service Inc.*, 37 F.Supp.3d 762, 778 (D. Md. 2014). Once a *prima facie* case is established, the burden shifts to MKT "to articulate a legitimate, non-retaliatory reason for the adverse action." *New v. Family Health Care, P.C.*, 2009 WL 2744682 (D. Md. 2019). If MKT articulates a legitimate reason, the

burden shifts back to Simons "to raise a genuine dispute as to whether the proffered reason is mere pretext for retaliation." *Id.*

The Court accepts that Simons made a complaint and was fired almost immediately afterwards.

Simons' support for a causal link between his complaints and his firing rests solely on the temporal proximity of the events. ECF No. 16, ¶ 24-26. "Mere temporal proximity between the protected activity and the adverse employment action is sufficient to establish a prima facie causal connection." *Mould*, 37 F.Supp.3d at 778. In response, MKT has provided ample evidence that Simons termination was for legitimate business reasons and had been conceived of well *in advance of* his approximately October 24, 2017, phone call and November 8, 2017, email. Simons was aware that MKT intended to focus on sales in the North Carolina market. ECF No. 25-4, pp. 104, 124-125. Simons acknowledges that he was repeatedly approached by MKT personnel to probe his interest in personally relocating to North Carolina. ECF No. 25-4, pp. 124-128. But on September 8, 2017, citing family considerations, Simons expressly rejected Brown's offer to relocate there. ECF No. 25-4, pp. 126, 178. On October 16, 2017, MKT had purchased a mechanical fabrication facility in Wilson, North Carolina and was in the process of expediting its search for a Sales Associate based in state. ECF Nos. 25-6, 7. MKT determined that it could not support the salary of two Sales Associates, but determined that it had to have a Sales Associate in North Carolina. ECF No. 25-3, pp. 66, 88. On approximately October 25, 2017, Brown scheduled a meeting with Simons to inform him he would be terminated. That meeting, Simons acknowledges, was scheduled *prior* to his November 8, 2017, email to Brown. ECF No. 25-4, p. 184. Simons admitted in deposition that, at the meeting, Brown informed him that he was being terminated because MKT was redirecting resources to North Carolina and that Simons had

previously indicated he did not want to relocate there. ECF No. 25-4, pp. 127-128. A new Sales Associate started work in North Carolina in January 2018. ECF No. 25-3. pp. 60-61.

Simons offers no facts to refute MKT's stated reason for his termination as pretextual. Indeed, Simons' deposition testimony corroborates MKT's explanation. ECF No. 25-4, p. 104. While temporal proximity of events may establish a prima facie case for retaliation, "temporal proximity alone does not rebut Defendants' legitimate, and uncontested, ground of termination." *New v. Family Health Care, P.C.*, 2009 WL 2744682 (D. Md. 2019) (citing *Yancey v. Nat'l Ctr. on Insts. & Alts.*, 986 F. Supp. 945, 956 (D. Md. 1997) (granting summary judgment where plaintiff did not present any evidence of pretext "beyond temporal proximity"), aff'd, 141 F.3d 1162 (4th Cir. 1998). In view of this, the Court grants summary judgment in MKT's favor as to Simons' FLSA retaliation claim.

## III.     Conclusion

For the foregoing reasons, MKT's Motion for Summary Judgment, ECF No. 25, is **GRANTED** and the case will be **CLOSED.**

A separate Order will **ISSUE.**

/s/
_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

**August 29, 2019**